No. 1-06-2754

FIRST DIVISION
FILED: 9-24-07

| | | |
|---|---|---|
| ANDREOU and CASSON, LTD., FRANK ANDREOU, LUKE CASSON, and FRANK KOSTUROS, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| v. | ) | No. 04 CH 20705 |
| | ) | |
| LIBERTY INSURANCE UNDERWRITERS, INC., | ) ) | Honorable |
| | ) | Sophia Hall, |
| Defendant-Appellee. | ) | Judge Presiding. |

JUSTICE ROBERT E. GORDON delivered the opinion of the court:

The issue presented in this case is whether defendant Liberty Insurance Underwriters, Inc. (Liberty), had a duty to defend its insured, plaintiff Andreou & Casson, Ltd. (A&C), a law firm, and their representatives, Frank Andreou, Luke Casson, and Frank Kosturos, in an underlying suit filed by Dana Kurtz (Kurtz) alleging, among other things, defamation. On March 24, 2003, Kurtz, an attorney, filed a complaint against A&C and their representatives alleging that she had been ousted from the firm, where she had been a partner, and that after being ousted, A&C and its various representatives "publicly disparaged her professionalism and integrity." On March 25, 2003, A&C tendered its defense of the Kurtz suit to Liberty, which refused the tender of defense and denied coverage on March 31, 2003. On October 27, 2004, A&C retendered the defense of the Kurtz suit to Liberty, and it again refused the tender claiming no coverage. On December 13, 2004, A&C filed a declaratory action in the chancery division of the circuit court of Cook County seeking, among other things, a declaration that Liberty had a

duty to defend A&C in the Kurtz suit.  On August 28, 2006, the trial court granted Liberty's motion for summary judgment finding that the Kurtz suit was not covered under the Liberty policy, and Liberty therefore had no duty to defend.

1.  The Underlying Lawsuit

On March 24, 2003, Dana Kurtz filed a complaint against A&C alleging that A&C and its representatives "publicly disparaged her professionalism and integrity."  The following summary of events leading to the filing of Kurtz's complaint is based, in part, on the allegations in her complaint.  Kurtz v. Andreou & Casson, Ltd., No. 03 CH 5433 (Cir. Ct. Cook Co.).

According to Kurtz's complaint, Kurtz was "a young attorney induced to join a partnership based on representations that were false and intended ultimately to deprive her of her attorneys' fees from several lucrative cases."  Specifically, Kurtz alleged that on August 3, 2002, "she entered into a verbal agreement with Andreou and Casson to join the firm of [A&C]" under certain conditions, including the condition that she would be an equal partner in all respects and that the firm name would be changed to include her own.  According to the complaint, Kurtz accepted the offer.  Kurtz "moved her law practice to [A&C's] place of business, joined the Partnership and practiced law with [A&C] and deposited all proceeds of her practice into the Partnership's firm account."

Kurtz alleged that from March 8, 2003, though March 15, 2003, Andreou and Casson breached the partnership agreement and engaged in various acts of wrongful conduct, including breach of fiduciary duties, fraud, disparagement, defamation, and humiliation.  The Kurtz complaint stated further:

2

"39. On March 17, 2003 Defendant CASSON filed a pleading in the District Court of the Northern District of Illinois falsely alleging that [Kurtz] 'removed several files from the offices of [A&C] and falsely [stated] that [Kurtz] was in possession of 'all relevant documentation, pleadings, and other written material which [was] required to respond to the motion' when in fact the [subject] files were in the possession of [A&C].

\*\*\*

41. At the time that they filed the false pleading, Defendants CASSON and ANDREOU were perfectly aware that [Kurtz] had certain documents from the file (namely discovery answers) because she had been previously working on [a] summary judgment response, as she had advised them.

42. That same day, Defendant CASSON called [Kurtz's] long-standing clients and made false representations that [Kurtz] had not filed anything with the Court on the clients' case, when in fact [Kurtz] had filed an appropriate motion.

\*\*\*

44. Defendants' statements and action were committed with the intent and effect \*\*\* to damage [Kurtz's] reputation \*\*\*.

\*\*\*

50. [Kurtz] has protectable interests in not having her reputation and character impugned \*\*\*.

\*\*\*

3

52. Further, [Kurtz] has already suffered *** as a direct and proximate result of [A&C's] false and defamatory statements *** and she has suffered injury to her reputation by [A&C's] false and defamatory statements.

***

91. [Kurtz] has suffered *** damage to her reputation in the legal community ***.

***

100. On March 17, 2003, Defendant CASSON called [Kurtz's] long-standing clients and made false representations that [Kurtz] had not filed anything with the Court on the clients' cases when in fact [Kurtz] had filed an appropriate motion."

At the underlying trial, A&C claimed that Kurtz was an employee of A&C, had never been a partner, and had been terminated from her employment in March 2003.

The trial court in the underlying action found in favor of Kurtz on February 23, 2005, and bifurcated the case by reserving the determination of damages subject to an accounting. The trial court found that Kurtz was a partner in the firm and that A&C breached the partnership agreement on March 8, 2003, when it refused to change the name of the firm and informed Kurtz that she was not an equal partner. Although the partnership purportedly terminated on March 10, 2003, no partner engaged in the winding up of the affairs of the partnership. The court found, therefore, that each party breached its fiduciary duty of loyalty and the partnership remained in existence until the contractual relationships with clients were wound up. Because each party

4

failed to account and hold for the benefit of the partnership any property or profit received in winding up the partnership affairs, the court imposed a constructive trust on the assets of each party and ordered an accounting.

It appears that the parties reached a settlement agreement after the court in the underlying action rendered its partial judgment. The trial court later vacated its order and both parties voluntarily dismissed their claims.

2. The Liberty Policy

The insurance policy at issue in this case, Illinois lawyers professional liability policy No. EJE-B71092764-012, was issued to A&C by Liberty for the period of September 20, 2002, to September 20, 2003.[1] The policy provided in pertinent part:

> "**We** agree to pay on **your** behalf all **damages** in excess of the deductible amount and up to the limits of liability stated in the Declarations that **you** become legally obligated to pay, provided such **damages**:
>
> 1. result from **claims**
>
> a. first made against **you** during the **policy period \*\*\*** and
>
> b. reported to **us** in writing, and
>
> 2. are caused by a **wrongful act** which takes place before or during the
>
> **policy period \*\*\*.**"

The policy provides the following definitions:

---

[1] The underlying Kurtz complaint alleged, among other things, defamation by A&C and its representatives in March 2003, which is within the policy period.

5

"**[W]rongful act** means any actual or alleged act, error, omission or personal injury which arises out of the rendering or failure to render professional legal services.

**[P]ersonal injury** means

a. *** humiliation ***

b. the publication or utterance of a libel or slander or other defamatory or disparaging material, or a publication or utterance in violation of an individual's right of privacy ***.

***

**[C]laim** means a demand received by **you** for money or services, including the service of suit or institution of arbitration proceedings against **you**, or a **disciplinary** proceeding."

The policy defines "you" as:

"b. if the **named insured** is a partnership or limited liability partnership, such partnership or limited liability partnership and each lawyer who is a partner thereof including any incorporated partner and each shareholder of any such incorporated partner;

c. if the **named insured** is a professional corporation, limited liability corporation or professional association, such professional corporation, limited liability corporation or professional association and each lawyer who is a shareholder or member thereof;

d. each lawyer employed by the **named insured**;

e. any person

1. who qualified prior to the **policy period**, but who no longer qualified as of the first day of the **policy period; or**

2. who during the **policy period** qualifies as an **insured** under b., c., or d., immediately above, but only to the extent such person performs or has performed **professional legal services** on behalf of the **named insured ***."**

The policy then contains the following exclusion:

"5. **Insured versus Insured.** For the purpose of this sub-section, the term 'insured' shall mean 'you'. The policy does not apply to any **claim** made by one or more insured against another insured unless an attorney/client relationship exists."

The Liberty policy further provides:

"**We** have the right and duty to defend any **claim** against **you** including the appeal thereof seeking **damages** to which this insurance applies even if the allegations of the suit are groundless, false or fraudulent."

On March 25, 2003, A&C tendered the defense of the Kurtz action to Liberty. On March 31, 2003, Liberty denied coverage for a variety of reasons, including the fact that the policy contained the *insured versus insured exclusion* that bars coverage for claims between insureds under the policy. On October 27, 2004, A&C re-tendered the defense of the Kurtz suit to

Liberty. Liberty again denied coverage, noting that Kurtz was an insured under the policy regardless of when she ceased practicing law with A&C.

### 3. The Declaratory Judgment Action

A&C filed the instant action, seeking a declaration that the policy provided coverage to A&C for the Kurtz action. Liberty answered A&C's complaint and filed a counterclaim for declaratory judgment. As part of its counterclaim, Liberty sought a declaration that the policy did not provide coverage for the Kurtz action for several reasons, including that the *insured versus insured exclusion* barred any duty to defend or indemnify A&C.

Liberty filed a motion for summary judgment. The trial court granted Liberty's motion for summary judgment on August 28, 2006, and specifically found that the *insured versus insured exclusion* barred coverage. This timely appeal followed.

### ANALYSIS

As previously noted, this appeal was taken from the trial court's grant of summary judgment in favor of Liberty and against A&C. "Summary judgment is appropriate where the pleadings, depositions, admissions, and affidavits on file, when taken together in the light most favorable to the nonmovant, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Gawryk v. Firemen's Annuity & Benefit Fund of Chicago*, 356 Ill. App. 3d 38, 41 (2005). Where, as here, "the parties have filed cross-motions for summary judgment, they agree that no genuine issue as to any material fact exists and that only a question of law is involved, and they invite the court to decide the issue based on the

record." *Gawryk*, 356 Ill. App. 3d at 41. We review a trial court's ruling on a motion for summary judgment *de novo*. *Gawryk*, 356 Ill. App. 3d at 41.

A&C claims that the trial court erred by granting Liberty's motion for summary judgment where the insurance policy in question establishes that Liberty had a duty to defend A&C in the Kurtz suit.

Initially, we note that in Illinois, the duties to defend and to indemnify are not coextensive, the obligation to defend being broader than the obligation to pay. *International Minerals & Chemical Corp. v. Liberty Mutual Insurance Co.*, 168 Ill. App. 3d 361 (1988). In determining whether an insurer has a duty to defend its insured, a court looks to the allegations in the underlying complaint and compares them to the relevant provisions of the insurance policy. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 107-08 (1992). "If the facts alleged in the underlying complaint fall within, or potentially within, the policy's coverage, the insurer's duty to defend arises." *Outboard Marine*, 154 Ill. 2d at 108. However, if it is clear from the face of the complaint that the allegations fail to state facts that bring the case within, or potentially within, the policy's coverage, an insurer may properly refuse to defend. *United State Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 73 (1991), quoted in *State Farm Fire & Casualty Co. v. Hatherley*, 250 Ill. App. 3d 333, 336 (1993). "[W]here an exclusionary clause is relied upon to deny coverage, its applicability must be clear and free from doubt because any doubts as to coverage will be resolved in favor of the insured." *International Minerals & Chemical Corp.*, 168 Ill. App. 3d at 367. "[W]here the language of an insurance policy is clear and unambiguous, it will be applied as written." *Hatherly*, 250 Ill. App. 3d at 337.

The construction of an insurance policy presents a question of law that is reviewed *de novo*. *Outboard Marine*, 154 Ill. 2d at 108.

In her complaint, Kurtz alleged that she entered a verbal agreement with Andreou and Casson on August 3, 2002, to join the law firm as an equal partner. She alleges that she, Casson, and Andreou reached an agreement that A&C's name would be changed to Andreou, Kurtz, and Casson to reflect her status as an equal partner in the firm. She alleged that she "moved her law practice to [A&C's] place of business, joined the Partnership and practiced law with [A&C] and deposited all proceeds [from] her practice into the Partnership's firm account." Kurtz further alleged that from March 8, 2003, through March 15, 2003, Andreou and Casson breached the partnership agreement by engaging in various acts of wrongful conduct including locking her out of the firm's place of business.

Comparing the language of the underlying complaint to the insurance policy at issue in this declaratory action, it is clear that the *insured versus insured exclusion* applies and that therefore Liberty owed no duty to A&C to defend it in the Kurtz action. As noted, the policy defines "you" as:

"b. if the **named insured** is a partnership or limited liability partnership, such partnership or limited liability partnership and each lawyer who is a partner thereof including any incorporated partner and each shareholder of any such incorporated partner;

c. if the **named insured** is a professional corporation, limited liability corporation or professional association, such professional corporation, limited

10

liability corporation or professional association and each lawyer who is a

shareholder or member thereof;

    d. each lawyer employed by the **named insured**;

    e. any person

    1. who qualified prior to the **policy period**, but who no longer qualified

as of the first day of the **policy period; or**

    2. who during the **policy period** qualifies as an **insured** under b., c., or d.,

immediately above, but only to the extent such person performs or has performed

**professional legal services** on behalf of the **named insured."**

The declarations in the insurance policy state that the insurance policy was issued to

A&C. The declarations list A&C as a professional corporation, although it was judicially

determined in the underlying suit that A&C operated as a partnership and not as a professional

corporation, and that Kurtz was a partner of that partnership. Under either scenario, it is clear

that Kurtz qualified as an insured under either paragraph b or c in that section of the insurance

policy that defines "you" for purposes of determining insured status. Kurtz's insured status

continued despite her termination on March 8, 2003, because even after she was terminated she

still retained her interest in the firm, providing her coverage under paragraph b or c. Therefore,

the trial court did not err by finding that Liberty did not owe a duty to defend A&C by operation

of the *insured versus insured exclusion*.[2]

---

[2]    Our conclusion is supported by the findings of the court in the underlying suit, although,

as noted above, the parties reached a settlement agreement and the trial court vacated that order.

Despite the foregoing, A&C argues to this court that Kurtz was a mere employee and not a partner of the firm. A&C argues that if Kurtz were to be considered an employee of A&C, then she would have ceased to have been an insured after her termination, with the exception of coverage under paragraph e in the section that defines "you." Initially, we note that A&C has cited no authority for its argument that aims to show that Kurtz was not an insured if she was to be considered an employee, and not a partner, of A&C. More importantly however, A&C has failed to provide anything in the record tending to show that Kurtz was a mere employee and not a partner. To the contrary, the record demonstrates that Kurtz was a partner or at least a member of a professional corporation, and hence an insured.

The record shows that Kurtz is listed as an undersigned on the prior acts exclusion endorsement that is part of the Liberty policy. Kurtz's signature appears alongside both Andreou's and Casson's signatures on a signature line that is entitled "Signature of Partner, Member, Owner, or Sole Proprietor," leading to the conclusion that Kurtz was a partner in A&C and an insured under the Liberty policy.

The trial court did not err in concluding that the *insured versus insured exclusion* operated to preclude coverage to A&C in the Kurtz suit, since Kurtz was an insured under the Liberty policy at the time of the alleged defamation.

### CONCLUSION

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Affirmed.

WOLFSON and GARCIA, JJ., concur.

12